

In The
# Court of Appeals
## Sixth Appellate District of Texas at Texarkana

_____

No. 06-12-00048-CV
_____

JUSTIN LANE, Appellant

V.

THOMAS DERWOOD LANE, GLYNDIA FAYE LANE, JASON LANE,
RACHEL LANE, AND MATTHEW LANE, Appellees

On Appeal from the County Court at Law 2
Gregg County, Texas
Trial Court No. 2012-476-CCL2

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

This is an accelerated appeal of an order entering a temporary injunction and appointing a receiver for Lane's Auto Sales.[1] Because we find no abuse of discretion, we affirm the judgment of the trial court.

## I.    Background

Justin Lane and his estranged wife, Angela Lane, filed their original petition for declaratory judgment against family members Thomas Derwood Lane, Glyndia Faye Lane, Jason Lane, Rachel Lane, and Matthew Lane (the Lane defendants), seeking a declaration that Justin and Angela "own, control and manage" all property, assets, and employees of Lane's Auto Sales "to the complete exclusion of all Lane defendants" and that all "Lane defendants have no ownership, management, authority or control of and/or over any real and personal property of Lane Auto Sales." Justin and Angela also sought a restraining order and injunction to keep Thomas, Glyndia, and the other Lane defendants from taking certain actions, including, among other things, "[i]nfringing on and hindering [Justin's and Angela's] exclusive and uninterrupted use, management and enjoyment of Lane Auto Sales. . . ."[2]

Thomas, Glyndia, and Rachel asserted counterclaims against Justin and Angela, alleging, among other things, that Thomas and Justin were equal partners in Lane's Auto Sales; Thomas

---

[1]The "Request for Additional Injunctive Relief" sought both a temporary restraining order and a temporary injunction. In a single hearing, the trial court granted the requested relief, but issued separate orders appointing a receiver and granting injunctive relief, each dated April 13, 2012. Under the circumstances, we consider and construe the orders together.

[2]Lane's Auto Sales is located at 3600 West Marshall Avenue and 100 Pine Tree Road in Longview, Texas.

2

alleged that Justin "froze [him] out" by failing to divide the profits of the business with Thomas, and failing to provide Thomas with financial information concerning the business. Thomas sought a declaratory judgment asking the trial court to declare Thomas as the owner of one-half of Lane's Auto Sales, and to further declare Thomas' and Justin's rights and status regarding their respective interests in Lane's Auto Sales.[3] In addition, Thomas and Glyndia requested a restraining order to keep Justin away from them and from alienating or destroying business assets, among other things. Finally, request was made for the appointment of Tommy Hiltzman, the general manager of Lane's Auto Sales, as the receiver for the business.

The trial court granted the application for temporary restraining order and set the temporary injunction hearing for March 19, 2012.

### A. Temporary Injunction Hearing

Thomas testified that he began his car business in Big Sandy in 1976 or 1977, and moved the business to Hawkins in the early 1990s. Thomas is licensed to operate as an independent motor vehicle dealer[4] and was operating his dealership under the name of Lane's Auto Sales, a sole proprietorship. In the late 1990s, Thomas brought his son, Jason, in as a partner in the

---

[3]In addition to the request for declaratory judgment, Thomas asserted claims against Justin for breach of contract, breach of fiduciary duty, unjust enrichment, conversion, money had and received, and a demand for an accounting.

[4]The license indicates the physical location of the dealership is 3600 West Marshall, as well as an additional location at 100 Pine Tree Road.

business.[5] In July 2004, Jason sold his interest in the dealership to Justin. At that point, Thomas testified that he and Justin began their partnership, although without a written partnership agreement.

Justin set up the bank account for the business at Austin Bank in Big Sandy. Prior to that, Thomas maintained the business account at CNB in Hawkins. Even though Thomas' name has never appeared on the Austin Bank account, Thomas testified that he is liable for the note at the bank there and that he is liable for half of any loss the dealership might sustain. Currently, Lane's Auto Sales has a line of credit of approximately $400,000.00 at Austin Bank.[6] Thomas testified that he transferred a $200,000.00 certificate of deposit from his bank in Hawkins to Austin Bank to secure the line of credit and that Justin put up a second certificate of deposit for that purpose.

According to Thomas, since the inception of the partnership, Justin has refused to provide Thomas access to the business' financial records. Connie Granger, Justin's mother-in-law, has managed all of the banking for Lane's Auto Sales since 2004. Thomas, Glyndia, Justin, and Angela were each paid a certain amount in a "draw" from the business each week. Thomas testified that he and Glyndia received draw checks in December 2010 and January 2011, but they did not cash them, as Granger indicated the business account was overdrawn.

---

[5]While Thomas and Jason were partners in the dealership, Thomas had free access to the financial information concerning the business.

[6]The initial line of credit was $800,000.00, to be used for purchasing inventory.

After having heard the foregoing testimony, the trial court determined there was "a good faith dispute between the parties" as to whether a partnership existed between Thomas and Justin. The hearing was suspended in order to afford the parties the opportunity to negotiate and potentially resolve their differences.

## B.     Request for Additional Injunctive Relief

Between the time the temporary injunction hearing was suspended and reconvened, Thomas and Glyndia[7] filed a "Request for Additional Injunctive Relief" on April 4, alleging that the temporary restraining order against Justin expired as a matter of law on March 29, 2012. They further alleged that on March 30, 2012, Justin absconded with virtually all of the assets of Lane's Auto Sales, including car titles, keys, vehicles, cash, checkbooks for the business, notes payable to the business, files pertaining to transactions for the sale of vehicles, payroll and financial files, and files pertaining to the real property where the business is located. It was further alleged that Justin closed the business account at Austin Bank and cut down the "Lane Auto Sales" thirty-foot pole sign with a cutting torch. Thomas requested the immediate return of the items and vehicles removed from Lane's Auto Sales, and further alleged that unless Justin was enjoined, the assets of the business could be sold, encumbered, and misappropriated.

---

[7]Because Thomas and Glyndia have sought identical relief, they will be jointly referenced as Thomas for ease of reading.

**C.  Hearing on Request for Additional Relief**

At the temporary injunction hearing and request for additional relief, Justin testified that he had been operating Lane's Auto Sales since August 2004.  Justin was concerned that the note that financed the business' inventory purchase—held solely in his name—would not be timely paid, and admitted to taking business files and records pertaining to those transactions, as well as vehicle titles and financial records of Lane's Auto Sales.  Justin further admitted to taking the keys to the vehicles in order to protect his personal and business assets, and to taking seventeen vehicles from the car lot, which he parked in the Austin Bank parking lot in Big Sandy.[8]  Further, Justin had the sign cut down at Lane's Auto Sales' 3600 West Marshall location.

Justin acknowledged that the third party financing companies for Lane's Auto Sales had not received paperwork they needed, because he removed that paperwork from the business premises.  If the financing companies fail to receive the paperwork, customers will lose their financing for vehicles already purchased.[9]

Both the motor vehicle dealership license and sales finance license were issued to Thomas, individually, and in the name of Lane's Auto Sales.  Justin conducts business at Lane's Auto Sales pursuant to the licenses issued to Thomas.

---

[8]While Justin testified Austin Bank had a security interest in those vehicles, he acknowledged receipt of a letter from Austin Bank's legal counsel asking that he remove the vehicles from the bank's parking lot because the bank did not claim an interest in them.

[9]According to Justin, the business checkbook, car titles, car keys, and financial documents were "put up" in a bank vault in Winona, Texas.  Justin did not know the name of the bank.

6

According to Angela, Justin has taken over $100,000.00 from Lane's Auto Sales for his own benefit, and has used the business to finance his casino gambling. Angela further testified that Thomas gave Justin the $200,000.00 certificate of deposit to use as security for the loan at Austin Bank, with the understanding that Justin would hold it in trust for them and return it at a later date. Now, it is impossible to do business at Lane's Auto Sales because Justin absconded with vehicles, car titles, and other transaction-related documents. As of the date of the hearing, the business had $32,000.00 worth of unpaid bills.

Thomas testified that in addition to the items previously mentioned, Justin took approximately $50,000.00 in cash received from customers as down payments on vehicles. As a result of Justin's actions, approximately twenty to thirty customers have not received their car titles. Absent an order requiring Justin to return the assets taken from the business, the business will "go under" and the customers will expect a return of their down payments.

Hiltzman has managed Lane's Auto Sales for the past four years. In that capacity, he has managed the sales, inventory, and financing of the business. If the proper paperwork is not sent to the third party financing companies, they will not honor the financing contracts. In this scenario, the down payment must be returned to the customer.

As of April 11, the business was receiving "[t]ons of complaints" from customers regarding the status of their "tags," and third party financing companies were threatening to return all financing contracts. Lane's Auto Sales is now subject to penalties for the failure to

transfer vehicle titles. Further, this state of affairs threatens to jeopardize Thomas' dealer and finance licenses.

Hiltzman testified that he was willing to serve as the receiver for Lane's Auto Sales. He acknowledged the duties and responsibilities that accompany that position.

At the conclusion of the hearing, the trial court orally appointed Hiltzman as the receiver for Lane's Auto Sales and ordered the injunctive relief requested by Thomas and Glyndia. The court ordered Hiltzman to post a $100,000.00 bond in order to secure his duties as receiver, and ordered Justin to return the assets taken from the business no later than 5:00 p.m. on April 12, 2012.

On April 13, the court entered the writ of injunction[10] and order appointing receiver.

## II.    Analysis

On appeal, Justin contends the trial court abused its discretion in issuing the temporary injunction and in appointing a receiver.

---

[10]The writ of injunction was issued to Justin, Thomas, and Glyndia. It required Justin to return all items taken from Lane's Auto Sales at 3600 West Marshall, Longview, Texas, no later than 5:00 p.m. on Thursday, April 12, 2012 (specifically enumerating all such items). Justin was ordered to refrain from using any asset of the business for any other purpose other than payroll; selling, transferring, assigning, mortgaging, encumbering or in any other manner alienating any property of Lane's Auto Sales; destroying, disposing of, or altering any financial records of Justin, Angela, or Lane's Auto Sales, including but not limited to records from financial institutions, all records of credit purchases, cash advances, accounts receivable, notes, tax returns, and financial statements; destroying, disposing of, or altering any e-mail or other electronic data of the parties and Lane's Auto Sales; falsifying any record of any nature relating to the property of Lane's Auto Sales; moving, closing, or opening any bank account or credit facility of Lane's Auto Sales; or removing any asset of Lane's Auto Sales from the premises of Lane's Auto Sales, located at 3600 West Marshall Avenue and 100 Pine Tree Road in Longview. With the exception of returning property, Thomas and Glyndia were subject to the same restrictions as was Justin.

8

Because it is an extraordinary remedy, a temporary injunction does not issue as a matter of right. *Butnaru v. Ford Motor Co*., 84 S.W.3d 198, 204 (Tex. 2002). The purpose of a temporary injunction is to preserve the status quo of the subject of litigation pending a trial on the merits, and will issue only if the applicant pleads and proves (1) a cause of action against the defendant, (2) a probable right to the relief sought, and (3) a probable, imminent, and irreparable injury in the interim. *Id.* An irreparable injury is shown if the applicant cannot be adequately compensated in damages or when damages cannot be measured by any certain pecuniary standard. *Id.* The issuance of a temporary injunction is reviewed for an abuse of discretion. *Id.* An abuse of discretion is shown when the trial court acts without reference to any guiding rules and principles. *Downer v. Aquamarine Operators*, *Inc*., 701 S.W.2d 238, 241–42 (Tex. 1985).

This Court should affirm the interlocutory appointment of a receiver unless the trial court clearly abused its discretion. *Benefield v. State*, 266 S.W.3d 25, 31 (Tex. App.—Houston [1st Dist.] 2008, no pet.). When the appointment of a receiver is within the discretionary authority of the trial court, this Court should not reverse simply because we might have reached a different decision. *Beaumont Bank*, *N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991). "The appointment of a receiver, nevertheless, is a harsh, drastic, and extraordinary remedy, to be used cautiously." *Benefield*, 266 S.W.3d at 31. Receivership is warranted only when the evidence shows a threat of serious injury to the applicant. *Id.*

9

Justin presents two points of error in support of his position that the writ of injunction should be reversed and three points of error in support of his position that the order appointing a receiver should be reversed.[11] We address each in turn.

## A. Injunctive Relief was Properly Granted

### 1. Adequate Remedy at Law

Justin initially claims that because Thomas has an adequate remedy at law, the trial court abused its discretion in issuing the writ of injunction. Granting an injunction in the face of an adequate remedy at law is an abuse of discretion. *Harris County v. Gordon*, 616 S.W.2d 167, 168–70 (Tex. 1981); *Bank of Tex., N.A. v. Gaubert*, 286 S.W.3d 546, 552 (Tex. App.—Dallas 2009, pet. dism'd w.o.j.). An adequate remedy at law is one that is complete, practical, and efficient to the prompt administration of justice as is equitable relief. *Cardinal Health Staffing Network, Inc. v. Bowen*, 106 S.W.3d 230, 235 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

Here, Justin contends damages can be calculated for loss of profits, conversion, loss of license, loss of financing and titles, and property damage. Typically, damages can be adequately calculated for each of these types of damage and loss. In certain circumstances, however, damages are inadequate if they are difficult to calculate. It is difficult to assign a dollar value to "such intangibles as a company's loss of clientele, goodwill, marketing techniques, and office stability." *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 228 (Tex. App.—

---

[11]In a separate appeal also decided today, Justin complains of the trial court's denial of his motion to vacate the order appointing receiver, in cause number 06-12-00058-CV.

Fort Worth 2009, pet. denied). Threatened injury to a business' reputation and goodwill with customers is frequently the basis for temporary injunctive relief. *Intercontinental Terminals Co. v. Vopak N. Am., Inc.*, 354 S.W.3d 887, 895 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Moreover, disruption to a business can be irreparable harm. *Lavigne v. Holder*, 186 S.W.3d 625, 629 (Tex. App.—Fort Worth 2006, no pet.). Merely because an applicant for a temporary injunction asks only for damages as the ultimate relief does not guarantee that damages are completely adequate as a remedy. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993);[12] *see also TCA Bldg. Co. v. Nw. Res. Co.*, 890 S.W.2d 175, 179 (Tex. App.—Waco 1994, no writ) (damages alone do not provide adequate remedy when damage award may come too late to save applicant's business).

Justin's actions in removing vehicles, vehicle keys, car titles, and transaction-related documents disrupted the business of Lane's Auto Sales and negatively impacted its reputation and goodwill with customers and financing companies, as evidenced by numerous customer complaints and the threatened return of financing contracts. Further, these actions threatened the continued viability of the business. The evidence established that the business would not survive absent the immediate return of the assets and documents removed by Justin. Without these documents and assets, the business would be "done" and "over." Hiltzman was given an

---

[12]In *Walling*, the Texas Supreme Court cited with approval *Roland Machinery Co. v. Dresser Industries*, 749 F.2d 380, 386 (7th Cir. 1984), wherein the court enumerated situations in which damages alone do not provide an adequate remedy, including a damage award which comes too late to save the plaintiff's business, the danger that the defendant may become insolvent before a judgment can be rendered and collected, and the difficulty of calculating damages. *Id.* at 386.

April 13 deadline by the financing companies to provide outstanding financing documents; otherwise, the contracts would be returned. Thomas testified that if the assets were not returned, the business would "go under" and the customers would expect a return of their down payments. Angela testified that it was impossible to do business at Lane's Auto Sales because Justin absconded with vehicles, car titles, car keys, and other transaction-related documents. Justin admitted that if the financing companies failed to receive necessary financing documents, customers would lose their financing for vehicles already purchased. The business was fielding numerous complaints from customers who had not received "tags" for recently purchased vehicles. Moreover, as of the date of the hearing, the business had $32,000.00 worth of unpaid bills.

Justin's actions no doubt adversely affected Lane's Auto Sales' business' reputation and good will with customers. *See Intercontinental Terminals Co.*, 354 S.W.3d at 895; *Frequent Flyer Depot, Inc.*, 281 S.W.3d at 228. Moreover, these actions jeopardized Thomas' dealer and financing licenses. In this situation, any damage award would come too late to save the business. This fact alone establishes the absence of an adequate remedy at law.[13] *See TCA Bldg. Co.*, 890 S.W.2d at 179; *Lavigne*, 186 S.W.3d at 629 (disruption to business can be irreparable harm).

---

[13]Thomas contends that because Justin did not have a license to sell vehicles in Gregg County, he was acting in violation of the law in so doing. This theory is asserted as an independent basis for the issuance of an injunction, in reliance on *Priest v. Tex. Animal Health Comm'n*, 780 S.W.2d 874, 876 (Tex. App.—Dallas 1989, no writ) (where facts conclusively show party is violating law, trial court has duty to enjoin violation). While the fact that only Thomas is licensed to sell vehicles was presented in support of the claimed partnership, this argument was not advanced in the trial court as an independent legal basis for the issuance of an injunction. We, therefore, do not address it on appeal. *See* TEX. R. APP. P. 33.1.

### 2.     Amended Order for Temporary Injunction Sets Trial Date

Justin further contends the temporary injunction is void, because it does not set the case for trial on the merits.  *See* TEX. R. CIV. P. 683.[14]  Justin is correct in his contention that the April 13 writ of injunction did not set the case for trial on the merits.  Had this state of affairs been left unattended, the temporary injunction could have been declared void and dissolved.  *See InterFirst Bank San Felipe*, *N.A. v. Paz Constr. Co.*, 715 S.W.2d 640, 641 (Tex. 1986) (because it failed to set case for trial on merits, temporary injunction declared void and ordered dissolved).[15]  Here, however, the omission of the trial date was corrected on June 20, when the trial court issued an amended temporary injunction order, setting the case for trial on December 10, 2012.  The amended order is essentially the same as the original injunction except that it sets a trial date.

A trial court has authority to enter an amended temporary injunction order correcting a Rule 683 deficiency.  *See Fischer v. Rider*, No. 02-10-00294-CV, 2011 WL 167226, at \*\*2–3 (Tex. App.—Fort Worth Jan. 13, 2011, no pet.) (mem. op.); *Chin Tuo Chen v. Braxton*, No. 06-09-00088-CV, 2010 WL 99064, at \*1 (Tex. App.—Texarkana Jan. 13, 2010, pet. denied) (mem. op.); *see also Donaho v. Bennett*, No. 01-08-00492-CV, 2008 WL 4965143, at \*3 (Tex. App.—Houston [1st Dist.] Nov. 20, 2008, no pet.) (mem. op.) (amendment to fill in trial setting did not

---

[14]Rule 683 provides, in pertinent part, "Every order granting a temporary injunction shall include an order setting the cause for trial on the merits with respect to the ultimate relief sought . . . ."  TEX. R. CIV. P. 683.

[15]The requirements of Rule 683 are mandatory and must be strictly followed.  *InterFirst Bank*, 715 S.W.3d at 641; *see In re Office of Attorney Gen.*, 257 S.W.3d 695, 697 (Tex. 2008).

interfere with relief sought because the two injunctions were substantively same and challenges "remain[ed] alive"). The amended order meets the requirements of Rule 683. We, therefore, overrule Justin's complaint of statutory deficiency in the superseded injunction order as moot.

### B. No Abuse of Discretion in Appointment of Receiver

#### 1. Adequate Remedy at Law

Next, Justin complains the trial court abused its discretion in appointing a receiver because an adequate remedy at law exists. Based on the foregoing analysis, this claim is without merit.

Even in the absence of an adequate remedy at law, Thomas would be entitled to the appointment of a receiver in accordance with Section 64.001(a)(3) of the Texas Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM. CODE ANN. § 64.001(a)(3) (West 2008).[16] A

---

[16]Thomas requested the appointment of a receiver pursuant to this section and pursuant to Section 11.404 of the Texas Business Organizations Code. TEX. BUS. ORG. CODE ANN. § 11.404 (West 2012). A receiver may be appointed pursuant to Section 11.404 if:

> (1) in an action by an owner or member of the domestic entity, it is established that:
>
>> (A) the entity is insolvent or in imminent danger of insolvency;
>>
>> (B) the governing persons of the entity are deadlocked in the management of the entity's affairs, the owners or members of the entity are unable to break the deadlock, and irreparable injury to the entity is being suffered or is threatened because of the deadlock;
>>
>> (C) the actions of the governing persons of the entity are illegal, oppressive, or fraudulent;
>>
>> (D) the property of the entity is being misapplied or wasted . . . .

TEX. BUS. ORG. CODE ANN. § 11.404(a)(1)(A)–(D).

court of competent jurisdiction may appoint a receiver in an action between partners or others jointly owning or interested in any property or fund. *Id.* Under this section, a receiver may be appointed on the application of the plaintiff in the action or another party. TEX. CIV. PRAC. & REM. CODE ANN. § 64.001(b) (West 2008). The party seeking the appointment of a receiver "must have a probable interest in or right to the property or fund, and the property or fund must be in danger of being lost, removed, or materially injured." *Id.*

The evidence established that business assets had previously been "removed" and that Thomas had a "probable interest" in those assets.[17] Moreover, a receiver appointed pursuant to Section 64.001(a) and (b) is not required to show that no other adequate remedy exists. *In re Estate of Trevino*, 195 S.W.3d 223, 231 (Tex. App.—San Antonio 2006, no pet.).

### 2. Election of Remedies

Justin further complains that the appointment of a receiver is barred by the doctrine of election of remedies. In support of this proposition, Justin relies on *Custom Leasing*, *Inc. v. Texas Bank & Trust Co. of Dallas*, 491 S.W.2d 869, 871 (Tex. 1973), which defines an election of remedies.[18] Justin fails to point this Court to any legal authority in support of the proposition

---

[17]Evidence adduced at both hearings demonstrated that Thomas established Lane's Auto Sales in the 1970s, and made Jason a partner in the business in the 1990s. While the existence of a partnership between Thomas and Justin is disputed, it is uncontested that Justin purchased Jason's interest in the business in 2004, and the license to sell and finance vehicle sales is in Thomas' name. Thus, Thomas has demonstrated a probable interest in, or right to, the assets of Lane's Auto Sales. The evidence further demonstrated that Jason removed valuable business assets from the business premises, and short of return of these assets, the business was unable to operate. Thomas has adequately demonstrated compliance with Section 64.001. TEX. CIV. PRAC. & REM. CODE ANN. § 64.001(a)(3), (b).

[18]*Custom Leasing* involved the issue of whether the entry of a money judgment against one defendant barred a tort claim against a different defendant. In 1973, the high court defined the doctrine as "the act of choosing between two

that such an election has occurred here, nor does he provide argument or analysis in support of this contention. Finally, this contention was not presented to the trial court. Because this issue was not presented to the trial court and is inadequately briefed, it has not been preserved for our review. *See* TEX. R. APP. P. 33.1, 38.1(i).

### 3. The Receivership Is Valid

Next, Justin contends the receivership is invalid because Hiltzman was not qualified as a receiver under Section 64.021 of the Texas Civil Practice and Remedies Code, which provides:

> (a) To be appointed as a receiver for property that is located entirely or partly in this state, a person must:
>
> > (1) be a citizen and qualified voter of this state at the time of appointment; and
> >
> > (2) not be a party, attorney, or other person interested in the action for appointment of a receiver.
>
> (b) The appointment of a receiver who is disqualified under Subsection (a)(1) is void as to property in this state.

TEX. CIV. PRAC. & REM. CODE ANN. § 64.021 (West 2008). Justin further complains that Hiltzman allegedly has a criminal record, a federal tax lien, and has not filed a receiver's oath.

Justin failed to raise any issue concerning Hiltzman's qualifications to act as a receiver in the trial court. There is no suggestion that Hiltzman was actually disqualified under subsection

---

or more inconsistent but coexistent modes of procedure and relief allowed by law on the same state of facts." *Custom Leasing, Inc*., 491 S.W.2d at 871. The second case cited in support of this claim is *Bocanegra v. Aetna Life Insurance Co*., 605 S.W.2d 848, 851 (Tex. 1980), in which the high court held that the election doctrine "may constitute a bar to relief when (1) one successfully exercises an informed choice (2) between two or more remedies, rights, or states of facts (3) which are so inconsistent as to (4) constitute manifest injustice." *Id*.

(a)(1).[19]  Accordingly, this issue has not been preserved for our review.  *See* TEX. R. APP. P. 33.1;

*see also In re Marriage of Davis*, No. 06-12-00019-CV, 2012 WL 2018262 (Tex. App.—

Texarkana June 6, 2012, no pet.) (mem. op.).

Even if the issue of Hiltzman's qualifications was properly raised in the trial court, there

is no evidence that Hiltzman was not a citizen or qualified voter of this state at the time of his

appointment.  Further, there is no evidence that Hiltzman has any interest in the action for which

his appointment was made.[20]

## III.    Conclusion

We affirm the judgment of the trial court.

Bailey C. Moseley
Justice

Date Submitted:       August 9, 2012
Date Decided:         September 4, 2012

---

[19]A receivership is void when the person appointed is disqualified under subsection (a)(1).  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 64.021(b).

[20]In closing argument, counsel for Justin spoke of a "romantic interest" between Hiltzman and Angela and that because of this, Angela's testimony "flipped."  Counsel did not contend, however, that Hiltzman had any interest in the action for which the appointment was made.