Nancy BENEFIELD, Nancy S. McNulty, Naomi Morales, Robert Seton, Ruthie Parker, Susan Berkley, Gloria Reeves, Shirley Buelow, and Angela Breedlove, Appellants,

v.

The STATE of Texas on Relation of the Alvin Community Health Endeavor, Inc. and Brazoria County, Texas, Appellees.

No. 01–07–00970–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 14, 2008.

Rehearing Overruled Oct. 10, 2008.

Amanda L. Sanders Debra L. Bradberry, Bradley M. Bingham, Lisa Gaye Mann, Bingham, Mann, House & Gibson, Houston, TX, Cynthia Lea Jones, Alvin, TX, for Appellants.

Jeri Yenne, Criminal District Attorney, Jim D. Wiginton, Criminal District Attorney, Trey Picard, Assistant District Attorney, Angleton, TX, for Appellees.

Panel consists of Justices TAFT, JENNINGS, and BLAND.

## OPINION

JANE BLAND, Justice.

After a conflict developed among the board members of a private, nonprofit community healthcare clinic, Brazoria County, on behalf of the State of Texas, brought a quo warranto proceeding, in which it sought a temporary restraining order and a temporary injunction against the chief executive and certain board members of the nonprofit, and the appointment of a receiver to run the clinic. The trial court granted the temporary restraining order and, in a subsequent hearing, ordered a temporary injunction against the board members from taking further action on behalf of the nonprofit. In addition, the court appointed a receiver to oversee all of its assets and business affairs, relying on Article 1396–7.05(A) of the Revised Civil Statutes. *See* Tex.Rev.Civ. Stat. Ann. art. 1396–7.05(A) (Vernon 2003). The board members appeal the temporary injunction and the order appointing a receiver, contending that the trial court (1) erred

in determining that Brazoria County was authorized to bring this quo warranto action against a nonprofit, (2) abused its discretion in ordering a temporary injunction and appointing a receiver, and (3) abused its discretion in admitting documents that were not properly authenticated. We conclude that Brazoria County has failed to show irreparable harm, or any grounds upon which it may impose a receiver to run the nonprofit. We therefore reverse the trial court's orders.

## Background

The Alvin Community Health Endeavor ("ACHE"), a nonprofit corporation founded in 1970, provides primary and supplemental healthcare services to community residents who are medically indigent or have limited healthcare provider options. Since its inception, ACHE has operated through various sources of funding, including private donations and donations from charitable organizations. In September 2005, ACHE began to receive federal funding as a Federally Qualified Health Center ("FQHC") to cope with additional medical care needs in Brazoria County in the wake of hurricanes Katrina and Rita. Brazoria County owns the property upon which ACHE's facility is located and leases the land to ACHE pursuant to an agreement that ACHE provide free and low-cost healthcare benefits to Brazoria County residents. The lease agreement recognizes that ACHE had attained FQHC status.

In May 2007, the Health Resources and Services Administration ("HRSA") of the United States Department of Health and Human Services, the federal agency overseeing FQHC funding, conducted an on-site diagnostic review of ACHE after it received complaints about ACHE's then-current chief executive officer, Nancy Benefield. Benefield had served as the chief executive officer since 1994. Based on its review, HRSA concluded that ACHE had failed to comply with various requirements for federal funding, and expressed "significant concerns regarding ACHE's clinical, fiscal and administrative operations as well as its governance." HRSA expressed its findings in a July 19 letter to Nancy McNulty, an ACHE board member. In the letter, HRSA recommended follow-up actions, and stated that if ACHE did not correct the deficiencies HRSA found, as well as comply with various requirements, it would deny ACHE's grant application, resulting in the loss of its federal funding. The letter requested a "Board-approved Corrective Action Plan, with time-framed objectives responsive to the concerns noted," by September 1.

Following the letter, in a series of events that spanned three days in late July, some members of ACHE's board of directors met and voted to terminate Benefield as CEO of ACHE. Then, board member Jerry Smith and others changed the locks at ACHE's clinic facility, issued a criminal trespass citation against Benefield, cancelled ACHE's insurance contracts, pulled the internet cabling out of the walls of ACHE's office, cancelled ACHE's housekeeping contract, and terminated employees of ACHE, all without any formal approval of the board of directors. Finally, certain other members of the board met again in an emergency meeting and voted to restore Benefield as CEO of ACHE.

In response to HRSA's warnings, ACHE hired a healthcare management company, which proposed a Clinic Management and Medical Staffing Agreement to ACHE to resolve the issues that concerned HRSA. Before the September deadline, Benefield sent a corrective action plan to HRSA, describing ACHE's accomplishments and continuing efforts to comply with the federal funding requirements.

The healthcare management company also sent a letter to ACHE's board of directors that outlined the progress made and planned future actions that would resolve the problems that HRSA identified in its summary of findings.

Fearful that ACHE stood to lose its federal funding, Brazoria County sued. In October 2007, the trial court granted Brazoria County leave to file "an information in the nature of a quo warranto." The county also applied for a temporary restraining order, a temporary injunction, and the appointment of a receiver over ACHE. In the quo warranto action against Benefield and eight other directors, the county alleges illegal corporate conduct, human resource code violations, and breach of ACHE's lease.

The trial court granted the county's request for a temporary restraining order. Thereafter, the trial court heard the applications for the temporary injunction and appointment of a receiver. The parties presented testimony from ex-board member Gary Goff, board members Nancy McNulty and Nancy Benefield, and Lynda Bible, who manages similar healthcare facilities in neighboring counties. At Brazoria County's request, the trial court also admitted several pieces of correspondence from HRSA. At the conclusion of the hearing, the trial court enjoined ACHE's directors from taking any action whatsoever on behalf of ACHE, except as directed by the receiver, and barred access to all funds, accounts, and real, personal, or mixed property. In addition, it appointed Bible as a receiver for ACHE, and authorized her to conduct all of ACHE's affairs. Benefield and the other board members bring an interlocutory appeal, seeking reversal of the temporary injunction and the appointment of the receiver. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(1), (4) (Vernon 2008). Recently, the trial court

extended the receivership until November 30, 2008. We granted the board members' motion to consider that order as part of this appeal. *See* Tex.R.App. P. 29.6 ("While an appeal from an interlocutory order is pending, on a party's motion or on the appellate court's own initiative, the appellate court may review ... a further appealable interlocutory order concerning the same subject matter.").

### Appellate Jurisdiction

■ As an initial matter, Brazoria County contests our jurisdiction over the board members' appeal of Brazoria County's authority to bring a quo warranto proceeding, contending that we lack jurisdiction to consider this argument in an interlocutory appeal. The board members argue that quo warranto proceedings are extraordinary in nature, and are not available to challenge the legality or propriety of board member conduct. *See Newsom v. State*, 922 S.W.2d 274, 279 (Tex.App.–Austin 1996, writ denied).

■ Appellate courts have jurisdiction to consider immediate appeals of interlocutory orders only if a statute expressly provides appellate jurisdiction. *Stary v. DeBord*, 967 S.W.2d 352, 352–53 (Tex.1998). The Texas Civil Practice and Remedies Code allows for an appeal from an interlocutory order that appoints a receiver or grants a temporary injunction. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(1), (4) (Vernon 2008) (listing appealable interlocutory orders). An order granting leave to file "an information in the nature of a quo warranto" is not included in the statute affording interlocutory appeals. *See id.* § 51.014; *Eichelberger v. Hayton*, 814 S.W.2d 179, 182 (Tex.App.–Houston [1st Dist.] 1991, writ denied). In addition, the record on appeal contains no trial court proceeding or order that could be framed as a plea to the

jurisdiction. Texas courts strictly construe statutes authorizing interlocutory appeals. *Walker Sand, Inc. v. Baytown Asphalt Materials, Ltd.*, 95 S.W.3d 511, 514 (Tex.App.–Houston [1st Dist.] 2002, no pet.). An order "granting leave to file an information in the nature of a quo warranto" is neither a final judgment, nor is it an interlocutory order made appealable by statute. Consequently, we lack jurisdiction to review Brazoria County's authority to bring the underlying proceeding, except insofar as it implicates the appeal of the temporary injunction and the appointment of a receiver.

### Temporary Injunction

■ The board members contend that the trial court abused its discretion in ordering a temporary injunction because Brazoria County did not plead and prove the elements required for a temporary injunction.

■ The purpose of a temporary injunction is to preserve the status quo pending trial, but it is an extraordinary remedy and does not issue as a matter of right. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex.2002). Trial courts have broad discretion in deciding whether to grant or deny a temporary injunction, and an appellate court should reverse only if it finds a clear abuse of that discretion. *Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd.*, 80 S.W.3d 601, 607 (Tex.App.–Houston [1st Dist.] 2002, no pet.). We should not reverse a trial court's temporary injunction unless it is "so arbitrary as to exceed the bounds of reasonable discretion." *Id.* We review the evidence in a light most favorable to the trial court's order, but an erroneous application of the law to undisputed facts constitutes an abuse of discretion. *Id.*

■ To obtain a temporary injunction, an applicant must prove (1) a cause of action against a defendant, (2) a probable right to the relief sought, and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru*, 84 S.W.3d at 204. An injury is irreparable if there is no adequate remedy at law; if for example, a prevailing applicant could not be compensated adequately in damages, or if damages cannot be measured by any certain pecuniary standard. *Id.* While the board members contend that none of these elements exists, the absence of any one renders an award of temporary injunctive relief inappropriate. *See id.* We find the third element dispositive.

Brazoria County asserts that ACHE is an important part of its obligation to provide healthcare assistance to its low-income residents. It leases county-owned land to ACHE to carry out that purpose. In support of the trial court's order, Brazoria County relies on evidence that ACHE might not qualify for the federal grant it had been receiving since 2005. ACHE, on the other hand, presented evidence that it was taking steps to comply with federal regulations. While the county's evidence suggests the possibility that this nonprofit corporation might lose its federal funding, it did not suggest that the loss of federal funding would jeopardize ACHE or its ability to serve low-income residents of Brazoria County. To the contrary, the testimony at the hearing was that ACHE operates through various sources of funding, and it operated without federal funding for thirty-five years before it first received federal funds. Brazoria County implies that ACHE has an obligation to it to seek and receive federal funding, but no evidence suggests that ACHE, a private, nonprofit corporation, either requires or depends on federal funding to be able to provide healthcare services to Brazoria County residents. Nor has Brazoria County offered any evidence

of such an obligation to it, either in the lease agreements or otherwise. Consequently, Brazoria County fails to show that it would suffer an imminent, irreparable injury, even if ACHE were to lose its federal funding. At most, Brazoria County has established a fear of the possibility of a future injury, and such a contingency "is not sufficient to support issuance of a temporary injunction." *See Reach Group, L.L.C. v. Angelina Group*, 173 S.W.3d 834, 838 (Tex.App.–Houston [14th Dist.] 2005, no pet.) (citing *EMSL Analytical, Inc. v. Younker*, 154 S.W.3d 693, 697 (Tex.App.–Houston [14th Dist.] 2004, no pet.)). Because the evidence does not support the trial court's finding that irreparable harm to Brazoria County is probable or imminent, Brazoria County has not satisfied the third element necessary to obtain a temporary injunction.

### Appointment of Receiver

■■■ The board members further contend that the trial court abused its discretion in appointing a receiver over all of the assets and business affairs of ACHE because the county did not plead and prove the elements required for the appointment of a receiver.

■■■ Whether authorized by statute or by equity, we should affirm the interlocutory appointment of a receiver unless the trial court clearly abused its discretion. *Mueller v. Beamalloy, Inc.*, 994 S.W.2d 855, 858 (Tex.App.–Houston [1st Dist.] 1999, no pet); *Abella v. Knight Oil Tools*, 945 S.W.2d 847, 849 (Tex.App.–Houston [1st Dist.] 1997, no writ). A trial court abuses its discretion when it acts without reference to guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). If the decision was within the trial court's discretionary authority, we may not reverse simply because we might have reached a dif-

ferent decision. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex.1991). The appointment of a receiver, nevertheless, is a harsh, drastic, and extraordinary remedy, to be used cautiously. *Hunt v. Merch. Mart, Inc.*, 391 S.W.2d 141, 145 (Tex.Civ.App.–Dallas 1965, writ ref'd n.r.e.); *see Balias v. Balias, Inc.*, 748 S.W.2d 253, 257 (Tex.App.–Houston [14th Dist.] 1988, writ denied). Even if a specific statutory provision authorizes a receivership, as in this case, a trial court should not appoint a receiver if another remedy exists, either legal or equitable. *Rowe v. Rowe*, 887 S.W.2d 191, 200 (Tex.App.–Fort Worth 1994, writ denied) (observing that statute permitting appointment of receiver over corporation authorizes appointment only if party seeking relief convinces trial court that all other legal and equitable remedies are inadequate). Rather, receivership is warranted only if the evidence shows a threat of serious injury to the applicant. *Parness v. Parness*, 560 S.W.2d 181, 182 (Tex.Civ.App.–Dallas 1977, no writ); *Hughes v. Marshall Nat'l Bank*, 538 S.W.2d 820, 824 (Tex.Civ.App.–Tyler 1976, writ ref'd n.r.e.); *Gunther v. Dorff*, 296 S.W.2d 638, 640 (Tex.Civ.App.–Waco 1956, writ dism'd). Our review focuses on whether the pleadings and evidence are sufficient to justify a receivership. *See Covington Knox, Inc. v. State*, 577 S.W.2d 323, 325 (Tex.Civ.App.–Houston [14th Dist.] 1979, no pet.) (noting that when appeal from order overruling motion to vacate receivership is perfected, question becomes simply one of sufficiency of petition to support appointment of receiver).

■■■ The Texas Nonprofit Corporation Act governs the appointment of a receiver to rehabilitate a nonprofit corporation, and it states in relevant part:

(A) A receiver may be appointed for the assets and business of a corporation by the district court for the county

in which the registered office of the corporation is located, whenever circumstances exist deemed by the court to require the appointment of a receiver to conserve the assets and affairs of the corporation and to avoid damage to parties at interest, but only if all other requirements of law are complied with and if all other remedies available either at law or in equity, including the appointment of a receiver for specific assets of the corporation, are determined by the court to be inadequate, and only in the following instances:

(1) In an action by a member when it is established:

(a) That the corporation is insolvent or in imminent danger of insolvency; or

(b) That the directors are deadlocked in the management of the corporate affairs and the members are unable to break the deadlock, and that irreparable injury to the corporation is being suffered or is threatened by reason thereof; or

(c) That the acts of the directors or those in control of the corporation are illegal, oppressive, or fraudulent; or

(d) That the corporate assets are being misapplied or wasted.

Tex.Rev.Civ. Stat. Ann. art. 1396–7.05(A). A court may appoint a receiver over an entire corporation only if all other remedies are deemed inadequate. *See Aubin v. Territorial Mortgage Co. of Am., Inc.*, 640 S.W.2d 737, 741–42 (Tex.App.–Houston [14th Dist.] 1982, no writ). The burden of proof to show the existence of circumstances justifying the appointment of a receiver rests on the party seeking the appointment. *See Furgerson v. First*

*Nat'l Bank,* 218 S.W.2d 1019, 1020 (Tex. Civ.App.–Texarkana 1949, no writ). To determine whether the appointment of the receiver was authorized, therefore, we first consider whether Brazoria County has met its burden to plead and prove that other remedies available either in law or in equity are inadequate. *See Aubin,* 640 S.W.2d at 741–42.

Nothing in the record indicates that Brazoria County met this burden or that the trial court considered remedies less drastic than a receivership. For example, if Brazoria County has a contractual interest in ensuring that ACHE maintains its FQHC status, as it contends, it has not shown that other remedies, such as money damages, cannot adequately protect that contractual interest. Because remedies at law were not even considered, they could not have been deemed "inadequate" as required by the Texas Nonprofit Corporation Act.

Furthermore, no evidence suggests that ACHE is insolvent or in imminent danger of insolvency to justify the appointment of a receiver to take control of the entire corporation and all of its assets; the county has merely shown that ACHE might lose one of its sources of funding. Brazoria County maintains that the public interest, as reflected in the Texas Health and Safety Code, requires the county to provide healthcare services to its low income residents, and that to meet this obligation, it leased county-owned land to ACHE on which ACHE operates a clinic that provides such services. *See* Tex. Health & Safety Code Ann. § 61.028(a) (Vernon 2001) (listing healthcare services county must provide for its indigent residents). In 2005, the county extended its lease with ACHE and noted that ACHE had become a FQHC, but nothing in the lease requires ACHE to maintain its status as a FQHC. The county also asserts that its own obli-

gation to provide healthcare to its indigent residents gives the county a legal and contractual interest in ensuring that ACHE maintain its FQHC status. The county's effort to transfer its own statutory obligation onto a private corporation, however, fails to meet the statutory test for a receivership—namely that without one, a danger of insolvency or injury to the county or its residents exists. Brazoria County's obligation to provide healthcare services to its residents does not require it to provide federally-funded healthcare services, nor is ACHE—a private corporation—required to maintain FQHC status to avoid a complete government takeover of its operations. Brazoria County fails to show how the county or its residents would be irreparably injured were ACHE to lose FQHC status, or that the loss of federal funding would place ACHE in danger of insolvency, or even that the loss of federal funding is a foregone conclusion. Accordingly, the county did not justify the appointment of a receiver on this ground.

Nor has Brazoria County demonstrated that the acts of the directors or those in control of the corporation are illegal, oppressive, or fraudulent. The county has shown only that, while one of ACHE's board members was on a brief sick leave, the board of directors had eight rather than the required nine members. This showing does not support Brazoria County's contention that the board was therefore illegally constituted in general. Brazoria County relies heavily on *Greater Fort Worth & Tarrant County Community Action Agency v. Mims* to justify the appointment of the receiver, but *Mims* is distinguishable. *See* 574 S.W.2d 870, 871 (Tex.Civ.App.–Fort Worth 1978, writ dism'd w.o.j.). The trial court in *Mims* appointed a receiver for the specific and limited purpose of ensuring that the dysfunctional board was properly constituted to allow a proper vote on a director's em-

ployment status. *Id.* at 871–72. The *Mims* court did not appoint a receiver to take full control over the entire corporation as the trial court did in this case. *See id.* *Mims* upheld the appointment of a receiver for the sole purpose of making a dysfunctional board functional and properly constituted; it did not authorize a receivership over all of a corporation's assets and business affairs.

Furthermore, *Mims* authorized such a limited receivership to reconstitute a dysfunctional board only when the board was "so impaired that it was no longer organized or functioning as it was established or constituted," and only when the court determines that a board is "illegally constituted." *See Swain v. Wiley College,* 74 S.W.3d 143, 148 (Tex.App.–Texarkana 2002, no pet.). No evidence suggests that ACHE's board was so impaired and dysfunctional that it was illegally constituted. On the contrary, the record indicates that ACHE's board was functional and that it was taking steps to correct the deficiencies found by the HRSA.

■ Because the appointment of a receiver over the assets and business affairs of a corporation is a "radical remedy," it should never be applied "unless some serious injury to the complainant will result, or is threatened." *See Tex. Consol. Oils v. Hartwell,* 240 S.W.2d 324, 327 (Tex.Civ. App.–Dallas 1951, orig. proceeding). Brazoria County has failed to demonstrate that a serious injury is threatened or will result to the county or its residents, and thus we hold that the court abused its discretion in appointing a receiver over all of ACHE's assets and business affairs.

### Admission of Evidence

■ Last, the board members contend that the trial court abused its discretion in admitting certain exhibits reflecting corre-

**34**

spondence from HRSA to ACHE, because the documents are not properly authenticated, constitute hearsay, and are irrelevant. The admission and exclusion of evidence is committed to the trial court's sound discretion, but a trial court abuses that discretion when it acts without regard for any guiding rules or principles. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753–54 (Tex.1995).

 Texas Rule of Evidence 803(8) excludes records from public offices and agencies from the hearsay rule. TEX.R. EVID. 803(8). However, such records must be properly authenticated to be admissible. TEX.R. EVID. 901(a). Generally, the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims, and specifically, public records or reports may be authenticated by evidence that the purported public record or report is from the public office where items of this nature are kept. TEX.R. EVID. 901(a); 901(b)(7). While Brazoria County contends that Rule 803(8) creates a presumption of admissibility, with the burden being placed on the party opposing the admission of the report to show its untrustworthiness, that presumption does not exempt the offered document from satisfying other requirements of the rules. *See 1001 McKinney, Ltd. v. Credit Suisse First Boston Mortgage Capital*, 192 S.W.3d 20, 27–28 (Tex.App.–Houston [14th Dist.] 2005, pet. denied). The rules of evidence do not require extrinsic evidence of authenticity as a condition precedent to admissibility for certified copies of public records because they are self-authenticating. TEX.R. EVID. 902(4). The contested exhibits here, however, were not authenticated by either certification or any extrinsic evidence. The trial court there-fore erred in admitting these documents over objections to their authenticity.

### Conclusion

We conclude that we do not have jurisdiction to consider the status of the pending quo warranto proceeding in this interlocutory appeal, but because Brazoria County does not show the necessary irreparable harm to support a temporary injunction or the appointment of a receiver, we reverse the trial court's orders granting a temporary injunction and a receivership, and remand the cause to the trial court for further proceedings. We dismiss all pending motions as moot.