**Opinion issued April 2, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00217-CV

———————————

## IN RE ESTATE OF GLORIA BANUELOS MARTINEZ

---

**On Appeal from the County Court at Law No. 2**
**Fort Bend County, Texas**
**Trial Court Case No. 13-CPR 026038**

---

## MEMORANDUM OPINION

This interlocutory appeal arises from a probate dispute. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(1). The sole issue in this appeal is whether the trial court properly appointed a receiver to sell real estate that was jointly owned by the estate and one of the heirs. Because there is insufficient evidence to satisfy the statutory

requirements for appointment of a receiver, we reverse the trial court's order, and we remand for further proceedings.

## Background

In March 2004, Gloria Banuelos Martinez bought a house in Fort Bend County with her daughter and son-in-law, Belinda and Thomas Kasmiersky. A "Joint Ownership Agreement and Non-Testamentary Transfer Agreement" provided that the property would be owned 50% by Belinda and Thomas, and 50% by Gloria, who would be responsible for paying all ad valorem taxes and insurance. The agreement established that upon Gloria's death one-third of her one-half interest would pass to Belinda in a non-testamentary transfer, and Belinda and Thomas would have the option to purchase the remaining interest in the property at then-current fair market value.

Gloria died intestate on August 4, 2013. She was survived by three children: Belinda Kasmiersky, Yolanda Sanders, and Paul Martinez. No will was admitted to probate, and the trial court appointed attorney Suzanne Kornblitt as dependent administrator. Belinda sought reimbursement for ad valorem taxes paid during Gloria's lifetime. Belinda and Thomas also sought to buy the remaining interest in the property.

For years, Gloria's heirs have argued about the Fort Bend County property, the estate's most valuable asset. They have also disputed the validity of the non-

2

testamentary transfer agreement, Belinda's claims for reimbursement, and the costs of administration. Belinda and Yolanda have each filed declaratory judgment actions seeking a determination of the validity and effect of the Joint Ownership Agreement and Non-Testamentary Transfer Agreement. Belinda has maintained that, as a result of the non-testamentary transfer, she owns a two-thirds interest in the property,[1] whereas Yolanda has argued that the estate owns a one-half interest in the property because the Agreement was invalid.

The trial court authorized the administrator to sell the entire property, and the administrator and a third party entered into a sales contract, which required that the closing date of the sale be on or before February 7, 2018.

The trial court confirmed the sale on February 5, 2018. Ten days later, the administrator filed an amended application for sale of real property, which showed the acreage associated with the property to be 1.8065 acres rather than 1.502 acres, as indicated in the earnest money contract, the prior application for sale of real property, and the prior order confirming the sale. On March 8, 2018, the trial court vacated its February 5, 2018 decree confirming the sale of real property In its order, the trial court indicated that the contract for sale of the property "terminated on February 6, 2018 for many reasons, especially because albeit it has no effect on the

---

[1]    ($\frac{1}{3}$ of Gloria's $\frac{1}{2}$ interest) = $\frac{1}{3} \times \frac{1}{2} = \frac{1}{6}$; and $\frac{1}{6} + \frac{1}{2}$ (Belinda & Thomas's interest) = $\frac{1}{6} + \frac{3}{6} = \frac{4}{6} = \frac{2}{3}$.

appraised value, the acreage reflected in the Application and Order to Sell and the Report and Decree does not match the acreage shown on the deed records."

Referencing the heirs' contentious relationship, the administrator sought appointment of a receiver to sell the property. She asserted that the heirs had orally agreed to sell the house, but they disagreed about what amount of the sale proceeds would be placed in the court's registry. She contended that this had created a problem for the title company and jeopardized the sale. In the application, the administrator stated that there was "a sale pending for $180,000," and the property was "in danger of being lost, damaged, or materially injured" because there was a risk that "we may lose the buyer." The administrator also stated that the estate lacked the funds to pay its debts, including insurance and property taxes. No evidence was attached to the application, and although no reporter's record was made of the hearing on the application for appointment of a receiver, it is undisputed that no evidence was presented at the hearing.

The trial court appointed a receiver to sell the entire property, deduct costs, and disburse one-half of the proceeds to Belinda and one-half of the proceeds to the registry of the court. Belinda then filed this interlocutory appeal.

**Analysis**

In her sole issue, Belinda argues that the trial court erred by granting the administrator's application for appointment of a receiver to sell the property. Among

4

other arguments, she contends that there was no evidence that the property was in danger of being lost, damaged, or materially injured.

## I. Evidentiary sufficiency is considered in an abuse-of-discretion review.

A party may bring an interlocutory appeal from an order appointing a receiver. TEX. CIV. PRAC. & REM. CODE § 51.014(a)(1); *see Estate of Hoskins*, 501 S.W.3d 295, 301 (Tex. App.—Corpus Christi 2016, no pet.). We review an order appointing a receiver for an abuse of discretion. *Perry v. Perry*, 512 S.W.3d 523, 526 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *Benefield v. State*, 266 S.W.3d 25, 31 (Tex. App.—Houston [1st Dist.] 2008, no pet.). "A trial court abuses its discretion when it rules arbitrarily, unreasonably, without regard to guiding legal principles, or without supporting evidence." *Bennett v. Baker Broocks & Lange, LLP*, No. 01-13-00674-CV, 2014 WL 3107661, at *1 (Tex. App.—Houston [1st Dist.] July 8, 2014, no pet.) (mem. op.) (citing *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998)). Under the abuse-of-discretion standard, legal and factual sufficiency of the evidence are not independent grounds of error: they are relevant factors in assessing whether the trial court abused its discretion. *See Fannin v. Fereday*, No. 01-13-00951-CV, 2015 WL 4463694, at *3 (Tex. App.—Houston [1st Dist.] July 21, 2015, no pet.).

## II. Chapter 64 provides the legal standard for appointment of a receiver over jointly owned property.

The party seeking the appointment of a receiver has the burden of proof to demonstrate that the circumstances justify the appointment of a receiver. *Benefield*,

5

266 S.W.3d at 31. Texas Civil Practice and Remedies Code section 64.001 provides that a "court of competent jurisdiction" may appoint a receiver in six specific circumstances, including "(3) in an action between partners or others jointly owning or interested in any property or fund . . . or (6) in any other case in which a receiver may be appointed under the rules of equity." TEX. CIV. PRAC. & REM. CODE § 64.001(a). When a movant seeks appointment of a receiver under subsection (a)(3), the movant "must have a probable interest in or right to the property or fund, and *the property or fund must be in danger of being lost, removed, or materially injured*." *Id.* § 64.001(b) (emphasis supplied). Because the appointment of a receiver is "a harsh, drastic, and extraordinary remedy, to be used cautiously," *Benefield*, 266 S.W.3d at 31, "receivership is warranted only if the evidence shows a threat of serious injury to the applicant." *Perry*, 512 S.W.3d at 527 (quoting *Benefield*, 266 S.W.3d at 31).

**III.     The appointment of a receiver in this case cannot be justified "under the rules of equity" alone.**

Throughout her brief, the administrator argues that the appointment of a receiver is justified on equitable grounds, suggesting that evidence of a danger of loss, removal, or material injury to property is not necessary. For example, she asserts that a court may appoint a receiver, on its own motion and in the absence of a party's application, when such an appointment is justified or to preserve property that is the subject of litigation. She also argues that appointment of a receiver is

6

appropriate in a probate case when the heirs cannot agree and years of litigation have ensued. She maintains that the trial court acted properly and "within its equitable jurisdiction" based on the judge's memory of hearings that had been held over more than five years of litigation.

The administrator relies on *In re Estate of Trevino*, 195 S.W.3d 223 (Tex. App.—San Antonio 2006, no pet.), and *In re Estate of Herring*, 983 S.W.2d 61 (Tex. App.—Corpus Christi 1998 no pet.), to support her argument that the appointment of a receiver in this case could be justified under either subsection (a)(3) or (a)(6) of section 64.001.

In *Trevino*, the executrix of an estate was the sole beneficiary, and she inherited a bar. 195 S.W.3d at 226. The bar's operator claimed an ownership interest under a handwritten bill of sale. *Id.* The executrix engaged an attorney to recover the property and resolve the operator's ownership claims, and for that representation she agreed to 40% contingency fee. *Id.* When the attorney prevailed in favor of the executrix, he became a 40% owner of the bar, which he contended the executrix was mismanaging. *Id.* at 228. The attorney then petitioned the court for partition by sale and appointment of a receiver, which the court granted. *Id.* On appeal the executrix argued that, in an action between co-owners of property, a receiver may be appointed under section 64.001(a)(3) upon a showing that the property is "in danger of being lost, removed, or materially injured." *Id.* at 231.

The court of appeals also noted that, under what was then subsection (a)(5), a trial court could appoint a receiver based on the rules of equity. *Id.* Quoting *Herring*, the court of appeals observed that "the appointment of a receiver will solve most, if not all, of the vexations and problems confronting the parties on the issue of partition, as well as management of the properties." *Id.* at 231 (quoting *Herring*, 983 S.W.2d at 65). The court of appeals concluded that the court could have appointed a receiver on an equitable basis due to the years of disputes and ongoing litigation about the management of the bar. *Id.* Notably, the court also concluded that there was some evidence that the bar was in danger of being lost, removed, or materially injured because of decreasing revenues and the declining value of the business, as shown by appraisals and purchase offers. *Id.* at 232.

The administrator's reliance on *Trevino* and *Herring* is misplaced. This Court has previously construed section 64.001 and reached a conclusion different from *Trevino* and *Herring*, both of which found that the equitable basis for appointment of a receiver could apply even if another subsection of 64.001 was applicable. *See id.* at 231; *Herring*, 983 S.W.2d at 65.

In *Mueller v. Beamalloy, Inc.*, 994 S.W.2d 855 (Tex. App.—Houston [1st Dist.] 1999, no pet.), this Court considered an interlocutory appeal from an order appointing a receiver to liquidate a corporation. 994 S.W.2d at 857. Mueller and Wilson jointly owned an electron-beam welding business. *Id.* After about 15 years,

8

Mueller brought a shareholder's derivative suit against Wilson. *Id.* On Wilson's application, which was based on the Business Corporations Act and the "rules of equity" provision of section 64.001, the trial court appointed a receiver to liquidate Beamalloy. *Id.* at 857–58. Mueller appealed. *Id.* at 858.

On appeal, this Court noted that then section 64.001(a)(5) applied to corporations, but required a showing of insolvency, dissolution, or forfeiture of corporate rights to justify appointment of a receiver. *Id.* at 861. Beamalloy could not satisfy that requirement. *Id.* at 861 The Court also considered the language of the rules-of-equity provision, which was then section 64.001(a)(7) and is currently codified as section 64.001(a)(6). *Id.*; *see* TEX. CIV. PRAC. & REM. CODE § 64.001(a)(6). That provision authorized the appointment of a receiver "in any other case in which a receiver may be appointed under the rules of equity." *See Mueller*, 994 S.W.2d at 861. The Court explained: "In authorizing a receiver in any *other* case, subsection (a)(7) applies to instances *beyond* those listed" in the other subsections. *Mueller*, 994 S.W.2d at 861 (emphasis original). "Given the specific grant of authority to appoint a receiver for a corporation under the circumstances listed in section 64.001(a)(5), the trial court had no authority to appoint a receiver" for Beamalloy under the rules-of-equity provision. *Id.*

For the same reasons, section 64.001(a)(6) applies to instances beyond the specific circumstances in subsections (a)(1) through (a)(5). Thus, if subsection (a)(3)

9

applies, then subsection (a)(6) does not. The administrator, as the representative of the estate, jointly owned the Fort Bend property with Belinda and Thomas. That made the underlying case "an action between . . . others jointly owning . . . property." TEX. CIV. PRAC. & REM. CODE § 64.001(a)(3). Because subsection (a)(3) applies in this case, we reject the administrator's arguments that the appointment of a receiver was justified "under the rules of equity," and we focus our review on whether the administrator met her burden to show that the property was in danger of being lost, removed, or materially injured. *See* TEX. CIV. PRAC. & REM. CODE § 64.001(b).

**IV. A conclusion that the property was in danger of loss, removal, or material injury must be supported by evidence.**

On appeal the administrator relies on three categories of support for the appointment of a receiver. First, she relies on arguments made in pleadings and hearings and factual assertions in pleadings and motions. Second, she presumes that the trial court took judicial notice of its own records. Third, she relies on the judge's recollection of testimony adduced at a prior hearing in connection with another motion. None of this is legally competent evidence capable of supporting the appointment of a receiver.

**A. Factual assertions and arguments in pleadings and motions are not evidence.**

Evidence may be in the form of testimony, documents, or tangible objects. *See* Black's Law Dictionary (10th ed. 2014) (defining "evidence"). Neither

allegations in pleadings and assertions in motions nor arguments of counsel constitute evidence. *See Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995) ("Generally, pleadings are not competent evidence, even if sworn or verified."); *ODIN Demolition & Asset Recovery, LLC v. Marathon Petroleum Co.,* LP, No. 01-17-00438-CV, 2018 WL 4131038, at *5 (Tex. App.—Houston [1st Dist.] Aug. 30, 2018, no pet.) (mem. op.) ("Unsupported arguments in briefs or motions are not evidence."); *Cleveland v. Taylor*, 397 S.W.3d 683, 693 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) ("Neither an attorney's argument nor the pleadings or motions of a party constitute evidence.").

**B. A trial court's discretion to take judicial notice is not unlimited.**

A trial court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." TEX. R. EVID. 201(b). A trial court may take judicial notice of its own file, but such judicial notice is limited to acknowledgement of the existence of the documents in the court's file. *Perez v. Williams*, 474 S.W.3d 408, 419 (Tex. App.—Houston [1st Dist.] 2015, no pet.). The "trial court may not take judicial notice of the *truth* of factual statements and allegations contained in the pleadings, affidavits, or other documents in the file." *Guyton v. Monteau*, 332 S.W.3d 687, 693 (Tex. App.—Houston [14th Dist.] 2011,

no pet.). "When evidence is the subject of improper judicial notice, it amounts to no evidence." *Id.*

**C. The trial court's recollection of testimony from prior hearings is not evidence.**

A judge may not take judicial notice of a fact learned over the course of litigation because "'personal knowledge is not judicial knowledge.'" *Id.* at 692 (quoting *Wilson v. State*, 677 S.W.2d 518, 524 (Tex. Crim. App. 1984)). Testimony from a prior hearing or trial may be considered in a subsequent proceeding when the transcript of that testimony is "properly authenticated and entered into evidence." *Id.* at 693.

Based on these principles, we conclude that much of what the administrator relies on to support the appointment of a receiver is legally no evidence, including: (1) unsupported arguments in pleadings and motions filed with the court, because the court may not take judicial notice of the truth of factual assertions in such documents; (2) testimony, argument, and documentary evidence from earlier hearings, transcripts of which do not appear in the record and were not admitted into evidence at the hearing on the application for receiver; and (3) any other personal knowledge that the trial court acquired about this case over the course of the litigation. We now consider whether evidence that was properly before the court supports the appointment of a receiver.

## V.     There is no evidence to support the appointment of a receiver under Section 64.001(a)(3).

In the application, the administrator asserted that the Fort Bend property was in danger of being lost, damaged, or materially injured because (1) "there exists a contract for sale, for a very good price, and we may lose the buyer," and (2) the estate had "insufficient funds" to pay its debts.

### A. There was no evidence of a pending contract for sale of the house or the likelihood of losing a buyer.

In the application, the administrator asserted, among othering things,[2] that a cash sale for $180,000 was pending. The day after the application was filed, the trial

---

[2]     In the application for appointment of a receiver, the administrator asserted that at a hearing in January 2018, "all the Parties before the Court insisted" that she "place the property for sale and sell the property." Neither a record from that hearing nor an affidavit from a participant was attached to the application, and no such evidence appears elsewhere in the appellate record.

The administrator recited facts about engaging a realtor, accepting an offer, and the ambiguity of a prior court order to sell the property. She also asserted that the title company "now refuses to commit to a title insurance policy" without agreement of all parties about disbursement of sale proceeds. These factual assertions are not supported by the record.

In her brief on appeal, the administrator argues that at a hearing on January 11, 2018, attorney Cassandra McGarvey, who was hired to represent the administrator in the competing declaratory judgment actions, testified that the November 2017 order of sale could make it difficult for a realtor or title company to "open title" and that a receivership was likely to be a better way to satisfy a title company. No record from this January 2018 hearing is in the appellate record, but even if we accepted the administrator's contention, we would nevertheless find that it does not support the factual assertions in the application because McGarvey's testimony was opinion evidence offered by another attorney. It was not evidence that any specific title company had refused to commit to a title insurance policy, as represented in the application for appointment of a receiver.

court determined that the contract for sale had terminated three weeks earlier. The trial court appointed a receiver on March 8, 2018, over a week after it entered the order to vacate, which recognized the earlier termination of the contract for sale. Only the original earnest money contract, which terminated in early February, appears in the appellate record. Thus, when the trial court appointed the receiver, there was no sale pending. The administrator presented no evidence that a sale would be lost or that the property could not be sold to another buyer if a sale was lost.

The administrator argues that testimony presented at the January 11, 2018 hearing established that appointment of a receiver would satisfy the concerns of the title company. But she failed to present evidence that a specific title company refused to commit to a title insurance policy, and there is no record of the January 11, 2018 hearing. The administrator referenced testimony from attorney Cassandra McGarvey, who recommended appointment of a receiver in light of the language of the court's order of sale. Nothing in the record indicates that McGarvey's testimony was admitted into evidence at the hearing on the application for a receiver. *See Guyton*, 332 S.W.3d at 693.

In addition, the administrator presented no evidence that the property itself was in danger of loss, removal, or material injury. She argues that the court could have relied on photographs she showed the judge at a hearing in November 2017, when the trial court signed its order of sale. But the photographs are not in the record

14

and the hearing was non-evidentiary. At the hearing, the administrator described the property as "a lovely home" and "adorable." The trial court judge could not have properly taken judicial notice of the photographs. *See id.* at 692–93.

**B. Evidence of cash-flow insolvency does not demonstrate that the real property was in danger of loss, removal, or material injury.**

Relying on her report and the vacated decree of sale, the administrator argues that the estate was "insolvent" and that she has "never been paid or reimbursed for her own cash outlays and for time spent on the case and at hearings." In the application for appointment of a receiver, she asserted that there were no estate funds available to pay for insurance or taxes.

Attached to the February 15, 2018 amended application for sale of real property was a verified exhibit showing the financial condition of the estate. It demonstrated that the estate had more assets than debts but lacked available cash to pay its debts. Evidence of this type of insolvency does not satisfy the statutory standard, however, because it does not show that the real property at issue is in danger of being lost, removed, or materially injured. *See* TEX. CIV. PRAC. & REM. CODE § 64.001(b). There is no evidence that a tax foreclosure suit had been threatened or filed and no evidence that Belinda and Thomas would not pay the taxes on the property, subject to a claim for reimbursement. *See Kneisley v. Intertex, Inc.*, 797 S.W.2d 343, 346 (Tex. App.—Houston [14th Dist.] 1990, no writ) (holding

15

evidence insufficient to support appointment of a receiver under Chapter 64 despite filing of tax foreclosure suit because danger of foreclosure was slight).

## Conclusion

We conclude that the administrator failed to carry her burden of proof on the danger of loss, removal, or material injury to the Fort Bend County real property over which the trial court appointed a receiver. *See* TEX. CIV. PRAC. & REM. CODE § 64.001(b). Accordingly, we hold that, based on this record, the trial court erred by appointing a receiver. We sustain Belinda's sole issue.

We vacate the order of the trial court appointing a receiver, and we remand for further proceedings.

Peter Kelly
Justice

Panel consists of Justices Lloyd, Kelly, and Hightower.

16