**Opinion filed March 13, 2025**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00161-CV

_____

## WARREN DEVELOPMENT, LLC, Appellant

## V.

## SUBWAY REAL ESTATE, LLC; DOUBLE C SUB CO., LLC; AND KRISTEN CHANDLER, Appellees

**On Appeal from the 385th District Court**
**Midland County, Texas**
**Trial Court Cause No. CV60766**

### M E M O R A N D U M   O P I N I O N

Appellant, Warren Development, LLC challenges the trial court's denial of its request for a temporary injunction to remove the access of Appellees, Subway Real Estate, LLC; Double C Sub Co., LLC; and Kristen Chandler to their unit inside Appellant's commercial building. Appellant argues that the trial court abused its

discretion by refusing its request for a temporary injunction because it proved all elements necessary for a temporary injunction to be granted. We affirm.

*Factual and Procedural History*

In its original petition, Appellant alleged that it leased commercial space to Subway Real Estate to allow Double C Sub Co.—a single member LLC managed by Chandler—to operate a Subway franchise. Appellant contended that Appellees were habitually late with lease payments, but further, they caused damage through "wild misuse of the water system," thereby requiring Appellant to install a new septic system. Appellant further complained of other problematic conduct in violation of the lease, including, but not limited to, failing to provide insurance information, installing a reverse osmosis (RO) water system, and impermissibly disposing of trash.

Appellant requested and received a temporary restraining order (TRO) from the trial court, which directed Appellees "to immediately cease and desist from operations," and that prohibited Appellees from entering the leased property. The trial court set the matter for hearing and heard Appellant's request for temporary injunction.

At the hearing, the following evidence was introduced: Chandler, the sole member of Double C Sub Co., subleases a commercial unit in "The Shops of Greenwood" from Subway Real Estate, where Chandler operates a Subway franchise (the franchise). Stephen Warren (Warren) is the president of Appellant, an LLC that owns and operates The Shops of Greenwood. Warren explained that he has encountered various issues with Appellees, including late lease payments, excessive water usage, storing equipment in another unit without permission, installing a reverse osmosis system, and personal conflict with Chandler. Appellant maintained that the franchise's water usage, which was confirmed through water meter readings, led to the flooding of the septic system's leach field, causing

2

Appellant to have to spend $182,000 to repair the septic system and $31,985 to frequently pump out the septic system. Comparing the franchise's water usage to that of other tenants in the building, the franchise allegedly used as much as 10,000 times more water.[1] Warren and Lorna Miedema, Appellant's employees, testified that, after the trial court signed its TRO, Appellant had no further septic issues.

Appellant's answers as to irreparable loss or damages was inconsistent. When asked if he thought he could be compensated for his losses without the temporary injunction, Warren initially answered, "Sure." However, when asked again by his counsel, Warren agreed that he *could not* be made whole through pecuniary damages, but he did not explain *why* monetary damages would be insufficient.

Chandler testified that she never received notice that any rent payments were late; rather, several rent payments were returned to her or went uncashed for several months. Chandler did not know why the franchise's water usage was much higher than other tenants but stated that she did not intentionally leave water running. Chandler explained that she installed the RO system to ameliorate poor water quality from the shopping center's well system and that Warren was aware of, and approved, its installation. According to Chandler, the franchise made between $3,000 and $3,500 in gross revenue per day, but it had been closed since the TRO was signed. Although Chandler testified that she had not been back to the property, she did acknowledge that her husband had placed a sign on the door, notifying customers that the franchise was temporarily closed.

Albert Faychak, III is a water treatment specialist that installed the franchise's RO system. Faychak testified that the RO system only runs when there are demands on it, such as from the ice machine or soda fountain; however, if something connected to it is leaking, it will increase the demand. Faychak believed that the RO

---

[1]Although Appellant provided meter readings for a dry cleaner and a meat market, it did not provide meter readings from other units in the building from which to compare the water usage.

system was operating normally. Faychak explained that the RO system he installed creates three and one-half gallons of waste for every one gallon of treated water produced. Faychak opined that the water usage could not be attributed to the RO system.

Gregory Kent Spencer, an environmental police officer for the Midland County District Attorney's Office, went to the shopping center to investigate a flooded area that smelled like septic waste. Officer Spencer ultimately determined that flooding occurred because the septic system was not a proper system; it was not large enough for the businesses on site. Officer Spencer agreed that although Warren was cited for a septic violation, the trial court dismissed his citation.

Johnny Saberance performed drain field aeration for Appellant to allow it to suck up more water. He believed the area flooded because too much water was entering the septic system. Saberance recommended changes to the septic system that would help resolve its issues, including adding an aerobic system. Monica Marentes, a public health inspector for the City of Midland, inspected all the properties at the shopping center on August 21, 2023, after responding to a complaint from one of the tenants regarding a water leak. Marentes did not discover any "sewage problems" during her inspections.

The trial court denied Appellant's request for a temporary injunction. This accelerated interlocutory appeal ensued. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4) (West Supp. 2024) (providing for accelerated appeal from an interlocutory order refusing a temporary injunction).

*Standard of Review & Applicable Law*

A temporary injunction is an extraordinary remedy which serves the purpose of preserving the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). A temporary injunction does not issue as a matter of right. *Id.* The status quo is simply the "last,

4

actual, peaceable, non-contested status which preceded the pending controversy." *Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 555 (Tex. 2016) (quoting *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004)). "To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Butnaru*, 84 S.W.3d at 204.

To establish a probable right to relief, a party must allege a cause of action and present evidence tending to sustain it; the party need not prove that it will prevail at trial. *Savering v. City of Mansfield*, 505 S.W.3d 33, 39 (Tex. App.—Fort Worth 2016, pet. denied). "An injury is irreparable if there is no adequate remedy at law; if for example, a prevailing applicant could not be compensated adequately in damages, or if damages cannot be measured by any certain pecuniary standard." *Benefield v. State*, 266 S.W.3d 25, 30 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (citing *Butnaru*, 84 S.W.3d at 204).

A trial court's order granting or refusing a temporary injunction is reviewed for abuse of discretion. *Butnaru*, 84 S.W.3d at 204. "We limit the scope of our review to the validity of the order, without reviewing or deciding the underlying merits, and will not disturb the order unless it is 'so arbitrary that it exceed[s] the bounds of reasonable discretion.'" *Henry v. Cox*, 520 S.W.3d 28, 33–34 (Tex. 2017) (quoting *Butnaru*, 84 S.W.3d at 204) (internal footnote and citation omitted). "No abuse of discretion exists if some evidence reasonably supports the [trial] court's ruling." *Id.* at 34. "Under this standard, we draw all legitimate inferences from the evidence in a manner most favorable to the trial court's ruling." *Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829, 838 (Tex. App.—Corpus Christi–Edinburg 2017, no pet.). As the factfinder, the trial court is the sole judge of the credibility of the witnesses and the weight to give their testimony; it may choose to

believe one witness and disbelieve another. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005).

*Analysis*

Appellant argues that the trial court abused its discretion by refusing its request for a temporary injunction because it met all legal requirements for its issuance. Because "some evidence reasonably supports the [trial] court's ruling," we disagree. *Henry*, 520 S.W.3d at 34. First, Appellant fails to properly identify the status quo. Here, the last, actual, peaceable, non-contested status between the parties existed prior to the trial court's TRO that prohibited Appellees from entering the premises or operating the franchise. *See Marquez*, 487 S.W.3d at 555; *Tex. Ass'n of Bus. v. City of Austin*, 565 S.W.3d 425, 437 (Tex. App.—Austin 2018, pet. denied); *see also Cliffs Prop. Owners' Ass'n, Inc. v. Double Diamond, Inc.*, No. 11-22-00158-CV, 2022 WL 4099296, at *3 (Tex. App.—Eastland Sept. 8, 2022, no pet.) (mem. op.) (concluding the trial court abused its discretion by granting a temporary injunction that upset—rather than preserved—the status quo). It was not until the controversy began that Appellees were precluded from entering the property and operating the business. Accordingly, the trial court did not abuse its discretion by refusing Appellant's request for a temporary injunction, which would have upset the status quo rather than preserve it. *See Marquez*, 487 S.W.3d at 555; *see also Cliffs Prop. Owners' Ass'n*, 2022 WL 4099296, at *3.

Additionally, although Warren provided conclusory testimony that he would suffer irreparable harm that could not be cured through pecuniary damages if the temporary injunction was refused, nothing in the record supports that conclusion. *See Benefield*, 266 S.W.3d at 30. Indeed, Appellant's only evidence regarding the harm he has suffered and will likely suffer is continued financial losses from pumping the leach field. Accordingly, the trial court could have readily concluded that the evidence did not support Appellant's claim of irreparable harm. *See id.*

Having reviewed the record, we conclude that the trial court did not abuse its discretion by refusing Appellant's request for a temporary injunction. *See Butnaru*, 84 S.W.3d at 204. Appellant's sole issue is overruled.

*This Court's Ruling*

We affirm the order of the trial court.


W. BRUCE WILLIAMS
JUSTICE


March 13, 2025

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.